163 N.J. Super. 578 (1978)
395 A.2d 525
JUDITH DE GRAAFF, PLAINTIFF-RESPONDENT,
v.
NICO DE GRAAFF, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 1978.
Decided November 22, 1978.
*579 Before Judges PRESSLER and KING.
Mr. Isidore Hornstein argued the cause for appellant.
Mr. Conrad W. Krafte argued the cause for respondent (Messrs. Liebowitz, Krafte & Liebowitz, attorneys).
The opinion of the court was delivered by KING, J.A.D.
This case presents the question of the power of a court to order a party to child support litigation to disclose federal income tax returns to an adverse party where he has remarried and filed a joint return with his present spouse. Following a hearing the trial judge issued an order that "the defendant shall furnish true copies of his joint 1976 federal income tax return for 1977 to plaintiff's attorneys." Defendant's present spouse objects to this procedure because it exposes her income and other financial information to plaintiff, her counsel and perhaps others. Defendant appeals asserting that the trial judge has no authority to order disclosure.
Although this appeal was not taken from a final judgment, we consider the issue presented to be important and recurrent, thereby justifying this court's interlocutory consideration. We therefore grant leave to appeal nunc pro tunc. R. 2:4-4(b)(2).
*580 Plaintiff Judith DeGraaff and defendant Nico DeGraaff, an attorney, were married in 1964. The only child of the marriage was born in 1966. In August 1969, in contemplation of divorce and on the advice of counsel, the parties entered into a property settlement agreement which was ultimately incorporated into the final judgment of divorce entered in September 1969. Plaintiff received custody of the child and subsequently remarried in 1971.
The agreement provided for weekly child support payments by defendant. Until the child reached age ten, defendant was obliged to pay a stated weekly installment subject to periodic biannual increments. Thereafter, the agreement provided as follows:
* * * In the event the wife has remarried or upon the remarriage of the wife after the child's tenth (10th) birthday and until the child is emancipated or becomes of age, the said payment for support and maintenance of the child shall be equal to twenty (20%) percent of the husband's net taxable income as determined for Federal Income Tax purposes, after the payment of such Federal Income Taxes, but in no event to be less than THREE THOUSAND NINE HUNDRED ($3,900.00) DOLLARS per year nor greater than SIX THOUSAND FIVE HUNDRED ($6,500.00) DOLLARS per year and payable in fifty-two (52) equal weekly installments during each year. This provision shall not be cumulative, but shall be determined at the expiration of each calendar year after the child's tenth (10th) birthday and remarriage of the wife. The condition having been met, the husband shall pay to the wife child support and maintenance at the rate of SEVENTY FIVE ($75.00) DOLLARS per week and he shall be required to pay the additional sum, if any, no later than April 15th of the calendar year following.
On June 27, 1976 the child reached ten years of age. On that date defendant began payments of $75 a week, or the minimum annual sum of $3,900 called for by the agreement. After April 15, 1977 plaintiff wrote to defendant reminding him of his obligation under the agreement and requested a copy of his 1976 federal income tax return. He refused to comply, and plaintiff filed her motion to compel disclosure *581 pursuant to R. 4:18-1, "Discovery and Inspection of Documents."
Defendant contends that his income tax returns are confidential and are privileged from discovery by federal law. He relies on § 6103 of the Internal Revenue Code of 1954 which provides that after returns have been filed with the government, no federal employee or officer shall disclose any information revealed by the return except to the taxpayer or his representative, with certain qualifications not here pertinent. 26 U.S.C.A. § 6103.
In support of his contention defendant cites only Peterson v. Peterson, 70 S.D. 385, 17 N.W.2d 920 (Sup. Ct. 1945), which held that a court order issued in a divorce action requiring a party to produce copies of his tax returns was void because of the "privilege" afforded by the 1939 Code's equivalent to 26 U.S.C.A. § 6103. Peterson is at best questionable authority. It cites no other supporting cases dealing with the discovery of income tax returns in matrimonial actions. The cases upon which it does rely all consider only a court's authority to order government custodians to produce income tax records. At least one other appellate court has specifically rejected defendant's argument that his remarriage and present joint-filing status affords his return an absolute privilege. Constantine v. Constantine, 274 Ala. 374, 149 So.2d 262 (Sup. Ct. 1963).
The reason for the federal statutory protection afforded returns is stated in Annotation, "Discovery  Income Tax Returns", 70 A.L.R.2d 240, 250 (1960 & Supp. 1978), as follows:
Probably the principal purpose of such statutes is to promote the collection of taxes by insuring to every taxpayer that public officers and employees will not disclose his secrets. Another purpose is to conserve the time of public employees so that it may be devoted to the business of the government.
Our State's position on discovery of tax returns in civil litigation has been consistent, at least since Finnegan v. Coll, *582 59 N.J. Super. 353, 356 (Law Div. 1960), where the court stated, "It is now sufficiently established that copies of income tax records are not privileged." See also, In re Frey, 26 N.J. Misc. 193, 58 A.2d 594 (O. & T. 1948).
In Ullmann v. Hartford Fire Ins. Co., 87 N.J. Super. 409 (App. Div. 1965), this court stated that "New Jersey, in common with most jurisdictions in which the question has arisen, has permitted discovery and inspection of income tax returns for good cause." Id. at 415. This court then provided guidance concerning the disclosure of tax returns, stating:
The average taxpayer is sensitive about his return and wishes to keep it from publication. He is entitled to that privacy unless there is strong need to invade it. If disclosure will not serve a substantial purpose it should not be ordered at all. If ordered, disclosure should be no greater than justice requires. The disclosure of entire returns should never be ordered if partial disclosure will suffice, and in all but the clearest cases the return should be examined by the judge before any disclosure is ordered. Even then the judge should impose such restrictions and limitations as may be necessary for the protection of the taxpayer. [at 415-416]
Moreover, if the movant has the information sought, or it is readily obtainable through other means, good cause for production is not shown. Id. at 415.
Further guidance was provided by our Supreme Court in Irval Realty v. Bd. of Pub. Util. Comm'rs, 61 N.J. 366 (1972), an action in lieu of prerogative writs asserting plaintiff's right to inspect records and reports of the Board of Public Utility Commissioners relating to a gas explosion. The Supreme Court there discussed the duty of the trial judge to analyze the facts and chose between the competing interests of disclosure and confidentiality in a given case. Where partial disclosure, rather than full disclosure, of the contents of a document is possibly the better course, Justice Mountain for the court gave the following directions:
In all future cases of this sort, where a controversy arises, the decision should be made by the trial judge to whom the issue will *583 be presented, either on motion or otherwise. He should call for and examine the report or other record. If in his sound judgment some part or all of the information therein contained should not be revealed, he will so rule. If the whole of the record cannot be shown to the party seeking discovery, but certain portions may be, then the judge should extract these portions and make them available for perusal or direct that such other practical steps be taken as will achieve the desired result. This kind of selective practice has for some time been successfully followed with respect to such sensitive documents as income tax returns, corporate records that touch upon trade or business secrets and the like. [at 375-376]
We conclude that this course should have been followed in the present case. The trial judge should have called for defendant's federal tax return, reviewed it in camera, and excised any matters relating to the income or other finances of defendant's present wife. Only then should the return, as redacted, be given to plaintiff. Such a protective procedure will preserve defendant's present wife's legitimate expectation of privacy in the return and furnish plaintiff with the information necessary to pursue her child's right to support. See R. 4:10-3. See also, the discussion in In the Matter of Myron Farber, 78 N.J. 259, pp. 274-278 (1978).
The remaining issue raised on appeal by defendant is clearly without merit. R. 2:11-3(e)(1).
The order of the trial court requiring unqualified production of defendant's 1976 federal income tax return is modified as hereinabove expressed. The matter is remanded to the trial court to proceed with an in camera redaction of the return consistent with this opinion. We do not retain jurisdiction.